UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JILLIAN L. PIERCE,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF MARIN, *et al.*,<br><br>Defendants. | Case No. 17-cv-03409-SI<br><br>**ORDER DENYING DEFENDANTS'**<br>**MOTION TO DISMISS THE FIRST**<br>**AMENDED COMPLAINT; DIRECTING**<br>**PLAINTIFF'S COUNSEL TO SERVE**<br>**DEFENDANT PENDER WITH FAC**<br>**(U.S. MARSHALS NO LONGER**<br>**REQUIRED TO EFFECT SERVICE)**<br><br>Re: Dkt. No. 48 |

On February 2, 2018, the Court held a hearing on the Marin County defendants' motion to dismiss the first amended complaint. For the reasons set forth below, the Court DENIES defendants' motion.

## BACKGROUND

### I. Factual Background

This lawsuit arises from plaintiff Jillian L. Pierce's repeated arrests and detentions based on a warrant issued for another individual named Arin Emily Huggard. First Amended Complaint ("FAC"), Dkt. No. 41 at ¶ 26. Huggard is "[w]hite, 5' 6" tall, and has distinctive tattoos . . . ." *Id.* ¶ 25. The FAC alleges that plaintiff "does not appear to be white and, in fact, she is of mixed ethnicity, including Filipino, and her skin complexion is dark," and that "Huggard's distinctive tattoos are unique to her." *Id.*

According to the FAC, on or around July 15, 2013, Huggard was arrested in the County of Marin and was booked into the Marin County Jail ("MCJ"). *Id.* ¶ 19. Huggard was fingerprinted

and photographed (from the front and both sides), and identifying information about her, including any distinctive characteristics, was documented. *Id.* At least by the time of the 2013 booking, Huggard was assigned a unique CII number.[1] *Id.* The same day, Huggard was charged in a complaint filed in Marin County Superior Court Case No. SC185382A with felony and misdemeanor drug possession charges, as well as one count of a misdemeanor violation of California Penal Code section 148.9(a) (representing a false identity to a California peace officer). *Id.* The next day, Huggard was arraigned in the Marin County Superior Court, and she entered a plea of not guilty. *Id.* ¶ 21.

The FAC alleges that between July 16 and 22, 2013, Huggard's case was continued four times, and "inferably, Huggard was transported by COUNTY OF MARIN Sheriff's Deputies each time back and forth from the Marin County Jail, to court, and then back to MCJ." *Id.* On July 23, 2013, Huggard pled guilty to one count of felony drug possession, after which a Marin County Sheriff's Office ("MCSO") Deputy took Huggard's thumbprint and placed a copy in the court file for Case No. SC185382A. *Id.* ¶ 22. Following the guilty plea, Huggard was placed on probation and released from custody. *Id.* ¶ 23. In February 2014, proceedings were held at the Marin County Superior Court in Case No. SC185382A as a result of Huggard's violation of probation. *Id.* ¶ 24. Huggard did not appear in court, and the judge issued a bench warrant for her arrest. *Id.*

Plaintiff alleges that on May 21, 2014, she was arrested in San Francisco, California, "and at some time thereafter was believed to be Huggard, the subject named in the above-referenced bench warrant out of the COUNTY OF MARIN, in Case NO. SC185382A." *Id.* ¶ 26. Plaintiff spent two days in the San Francisco County jail, and then on May 23, 2014, she was delivered to the County authorities on the warrant in Case No. SC185382A. *Id.* ¶ 27. At the MCJ, plaintiff went through a booking process, which included being fingerprinted, having her booking photo taken, and being subjected to a visual body cavity search. *Id.* ¶ 29. The booking photographs

---

[1] The FAC alleges that the CII number is a unique identifying number that the California Department of Justice ("CDOJ") assigns to every person booked into a California jail. *Id.* ¶ 48. The CII number is tied to the booked person's fingerprint, which is unique to the person. *Id.* A jailer can obtain an arrestee's CII number, associated identifiers and the arrestee's criminal history by sending the arrestee's fingerprint image to the CDOJ, if the fingerprint is already on file. *Id.*

clearly depicted all of plaintiff's distinctive features, including her tattoos "which are different from those of Huggard," and her dark complexion. *Id.* After plaintiff was in custody at the MCJ for several hours, the MCSO deputies discovered that neither plaintiff's fingerprints nor her CII number matched those of the subject of the warrant, Huggard. *Id.* ¶ 30. After learning that Huggard must have used plaintiff's name previously, and that Huggard was in-custody in a different county, the MCSO released plaintiff. *Id.* ¶¶ 30-31.

The FAC alleges that in June 2014, another bench warrant was issued in Case No. SC185382A, and the warrant was served. *Id.* ¶ 32. In August 2015, a probation violation hearing was held in Case No. SC185382A, and Huggard failed to appear. *Id.* ¶¶ 33-34. Thereafter, another bench warrant naming Huggard was issued. *Id.* ¶ 34.

In February 2016, California Highway Patrol ("CHP") officer Matthew Pender pulled over plaintiff and arrested her pursuant to the warrant for Huggard. *Id.* ¶ 35. The FAC alleges that the name in the warrant as well as other identifying information of the subject of the warrant, including distinctive physical features, distinctive tattoos, height, CII number and fingerprint, were those of Huggard and not of plaintiff. *Id.* Despite plaintiff's protestation of mistaken identity, plaintiff was booked into Santa Rita Jail, where she was subjected to a strip search and visual body cavity search. *Id.* The FAC alleges that the "warrant abstract" listed a telephone number for the County of Marin's Sheriff's Office, "which is inferably a Warrants and Wants division," but that Pender did not contact the Sheriff's Office or the County of Marin Probation department. *Id.* Plaintiff spent about 2 days at Santa Rita Jail, and then she was issued a citation, signed a promise to appear, and given a March 4, 2016 court date to appear in the County. *Id.* ¶¶ 35-36.

Plaintiff then contacted the County of Marin's Public Defender's Office, and was represented by Ms. Bryna Holland. *Id.* ¶ 36. On March 4, 2016, *People v. Huggard* (Case No. SC185382A) was called in Marin County Superior Court and "the warrant was apparently stayed by the Court until March 9, 2016 based on correspondence that had been submitted." *Id.* ¶ 37. The matter was continued to March 25, 2016. *Id.* On March 25, Deputy Public Defender Holland appeared on behalf of plaintiff and informed the court that plaintiff had previously been falsely arrested as a result of the warrant for Huggard. *Id.* ¶ 38. The judge noted that when Huggard pled

guilty in July 2013, the MCSO fingerprinted her and that her fingerprint was in the court file, and the deputy district attorney stated that there were "identifying tattoos of the actual person who committed this crime and who suffered the conviction and that is different from Miss Holland's client." *Id.* The court issued another warrant for Huggard. *Id.*

On or about March 29, 2016, a County of Marin employee, working in the Marin County Sheriff's Office Warrant Division was working on the warrant in Case No. SC 185382A, and mailed a notice of the warrant to an address in Antioch, California. *Id.* ¶ 39. The FAC alleges that despite having readily available information to indicate that plaintiff was not Huggard, and having constructive knowledge that plaintiff had already been wrongfully booked into the MCJ on a warrant in Huggard's case, this employee failed to take any corrective action, such as correcting the date of birth, or adding information unique to Huggard relating to her physical description. *Id.*[2]

In April 2016, the bench warrant in Case No. SC185382A was recalled and re-issued by Judge Boren, who "ordered that Arin Huggard's date of birth be placed on the warrant." *Id.* ¶ 40. The new warrant "was issued for Arin Huggard, the defendant in Case No. SC185382A, with bail being set at $25,000.00." *Id.* Later, the MCSO Warrant Division "peculiarly and inexplicably sent correspondence to the home of a friend of Plaintiff, in Antioch, California, which was a 'COURTESY NOTICE OF WARRANT' concerning a warrant for the arrest of Arin Huggard." *Id.* ¶ 41. The warrant did not name plaintiff, but her date of birth appeared on the warrant. *Id.* Plaintiff immediately notified Ms. Holland, who in turn took steps to notify the County employees and agents in order to correct the continued erroneous association of plaintiff's birthday and physical description with Huggard's. *Id.*

On May 10, 2016, Ukiah Police Department ("UPD") officers were called to the scene of a domestic disturbance, where plaintiff was the victim of domestic violence. *Id.* ¶ 42. Plaintiff, who was about five months pregnant, was "extremely distraught and crying," and told the UPD officers that her boyfriend "had struck her." *Id.* The UPD officers learned of the warrant under Case No.

---

[2] The FAC does not explicitly allege that the previous warrants for Huggard incorrectly listed plaintiff's birthdate, but that is the implicit suggestion.

SC185382A in Huggard's name. *Id.* Plaintiff protested that she was not the subject named in the warrant and explained that it was a mistake as a result of identity fraud. *Id.* The UPD officers contacted the County to investigate the issue through their dispatcher. *Id.* Shayna Orr, an employee of the MCSO working in the warrant division, told the dispatcher that the subject of the warrant was extraditable or citable. *Id.* When asked for Huggard's photograph, Orr sent the booking photos of plaintiff from May 23, 2014, despite having Huggard's photograph from her 2013 booking. *Id.* Based on the photographs the UPD officers received from Orr, the officers arrested plaintiff pursuant to the warrant under Case No. SC185382A, and sent plaintiff to the Mendocino County Jail. *Id.*

The FAC alleges that as a result of this wrongful unavoidable arrest, plaintiff had to pay $2,500 for bail in order to be released from custody, and had to return to court to continue to deal with the issue of being mistakenly arrested under the warrant naming Huggard. *Id.* ¶ 43.

Plaintiff alleges that on a different occasion she was detained and searched under the pretense that she was Huggard, but she was eventually released. *Id.* ¶ 44. Plaintiff alleges another instance in 2016 where a CHP officer pulled her over, and over her protestation of mistaken identity, detained her and searched her vehicle pursuant to the warrant for Huggard. *Id.* at ¶¶ 1, 45. At the time, plaintiff was "still pregnant with a high-risk pregnancy." *Id.* ¶ 45. The officer did not find any contraband, and plaintiff was eventually released. *Id.*

Around June 2016, the District Attorney dismissed the criminal case against Huggard. *Id.* ¶ 46. In November 2016, plaintiff sought employment and "was hired pending a background investigation." *Id.* ¶ 47. Plaintiff alleges that she was notified approximately two weeks later that the investigation (incorrectly) revealed that she was on probation with the County of Marin, and that "[a]s a result of this erroneous finding contained in a consumer report, her job offer was withdrawn." *Id.*

Acting *in pro per*, plaintiff presented a tort claim to the County using the County's claim form, pursuant to Government Code § 910 *et seq*. *Id.* ¶ 17. The claim was filed on October 21,

2016. Dkt. 48-1, p. 2.[3]  On the claim form, plaintiff provided her name, address, phone number, and mailing address.  *Id.*  Plaintiff wrote that the date of her injury was "on or between April 15-30, 2016  do not recall exact date."  *Id*.  Under "General Description of Injury, Damage or Loss and Circumstance which Gave Rise to the Claim:" plaintiff wrote, "I was falsely arrested on Marin County warrant from an Erin Huggard using my name after going to court + proving warrant was false in my name."  *Id*.  Plaintiff also wrote that "Marin County Jail and/Sheriff's office contributed to false arrest after Bryna Holland sent e-mail stating false warrant was reissued."  *Id*.

Plaintiff alleges that the County is the employer of the individual County defendants, and that the County operates the MCSO and the MCJ.  *Id.* ¶¶ 6-7.  At all relevant times, Doyle "was employed by Defendant COUNTY as Sheriff for the COUNTY," and acted "within the course and scope of that employment."  *Id.* ¶ 8.  Plaintiff alleges that MCSO employees, including Orr, were deliberately indifferent to plaintiff's Constitutional rights.  *Id.* ¶¶ 31, 39, 41, 42, 54, 55.  The FAC also alleges that defendant Doyle "was the final policy making official for the MCSO and the Marin County Jail, ultimately responsible for all policies, procedures, supervision, and training for the MCSO and at the jail and other facilities where booking, fingerprint, photograph, arrest, wanted persons, and arrest warrant information is stored, processed, analyzed, reviewed, updated, investigated, compared, and communication of these subjects is related to other agencies."  *Id.* ¶ 8a.

Plaintiff alleges, on information and belief, that law enforcement agencies use local, state and national databases that contain information about outstanding warrants, including state, federal and local identifier numbers that uniquely identify the subject of the warrants.  *Id.* ¶ 50. The California Department of Justice ("CDOJ") instructs California law enforcement agencies not only to include the warrant subject's state, federal and local identifier number, but also to record information about persons wrongfully arrested on warrants for another.  *Id.*  Further, plaintiff alleges, on information and belief, that the MCSO maintains a recording system or database for

---

[3] Defendants request the Court to take judicial notice of plaintiff's Claim Form, Dkt. No. 48-1.  This document is referenced in the FAC, and plaintiff has not disputed its authenticity.  *See* Dkt. No. 41 at ¶¶ 17, 81, Dkt. No. 54 at 5:7-8, 23:11-12, 24:15-16.  Accordingly, the document is properly subject to judicial notice, and the Court takes judicial notice of Dkt. No. 48-1.

holding suspect information and where information of suspects and wanted persons may be entered by MCSO staff. *Id.* at ¶ 53. Such information entered into the system or database is forwarded to other agencies, which may rely and use the information to arrest individuals or summon individuals to court. *Id.*

## II.     Procedural Background

On June 13, 2017, plaintiff filed a *pro se* complaint against the County and County of Marin Sheriff Robert T. Doyle, the State of California, the City of Ukiah, and Does 1 through 50. The complaint alleged civil rights violations under federal law, the California state constitution and state law, as well as claims for false imprisonment, false arrest and negligence. Dkt. No. 1. On August 21, 2017, plaintiff counsel entered an appearance in this case. Dkt. No. 19. In response to a motion to dismiss filed by the State of California, plaintiff filed a statement of non-opposition and stated that she intended to file a first amended complaint. Dkt. No. 20; Dkt. No. 25 at 3:7-10.

On October 17, 2017, plaintiff filed the FAC. The FAC no longer named the State of California or the City of Ukiah as defendants, and added defendants County of Marin Sheriff's employee Shayna Orr, CHP Officer Matthew Pender,[4] and Does 51 – 200. Dkt. No. 41. The FAC alleges six causes of action: (1) violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against defendants Orr, Doyle, Pender and Does 2-200; (2) *Monell* and supervisory liability pursuant to 42 U.S.C. § 1983 against defendants County, Doyle and Does 61-100; (3) violation of California Constitution Article I, § 13 against defendants County, Orr, Doyle and Does 2-40; (4) violation of California Civil Code § 52.1(b) ("Bane Act"); (5) false arrest and false imprisonment; and (6) negligence. *Id.*

On November 17, 2017, defendants County of Marin and Doyle moved to dismiss the FAC for failure to state a claim. Dkt. No. 48.[5] Plaintiff filed a timely opposition to the motion on

---

[4] As discussed at the hearing, the Court directs plaintiff's counsel to serve Pender with the FAC.

[5] On November 22, 2017, defendant Orr filed a notice to join defendants' motion to

7

United States District Court
Northern District of California

December 1, 2017. Dkt. No. 54. Defendants filed an untimely reply on January 26, 2018.[6] Dkt. No. 63.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. Pro. 8(a)(2), and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

---

dismiss. Dkt. No. 52. Plaintiff objects that Orr's joinder is improper. The Court finds that plaintiff is not prejudiced by the filing of Orr's joinder, and the Court will consider defendants' arguments as they relate to Orr.

[6] Pursuant to Civil Local Rule 7-3, an opposition to a motion must be filed and served no later than fourteen days after the motion was filed, and the reply must be filed and served not more than seven days after the opposition was due. Defendants filed the motion on November 17, 2017, and plaintiff filed a timely opposition on December 1, 2017. Defendants' reply was therefore due on December 8, 2017. Defendants did not file a reply by that date. The Court continued the hearing date several times, and in a clerk's notice filed on January 5, 2018, the Court directed defendants to inform the Court by January 8, 2018 whether they intended to file a reply. Defendants did not respond to the clerk's notice, and instead on January 14, 2018, filed a letter stating that defendants would be filing a reply. Dkt. No. 61. On January 26, 2018, one week before the scheduled hearing date, defendants filed their reply without seeking leave of court to do so. Dkt. No. 63. The Court will not consider any new arguments raised in defendants' reply. Defense counsel is directed to follow the Civil Local Rules and this Court's standing orders with regard to all future litigation of this case.

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

As a general rule, the court may not consider materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). However, the court may take judicial notice of some public records, including the 'records and reports of administrative bodies.'" *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (citing *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir.1953)). The court may not take judicial notice of facts in the public record that are subject to reasonable dispute. *Lee*, 250 F.3d at 690.

**DISCUSSION**

**I.    Fourth and Fourteenth Amendments (First Cause of Action)**

Plaintiff alleges that Doyle and other County employees, acting under the color of state law and pursuant to customs and policies of the County, deprived plaintiff of her Fourth and Fourteenth Amendment rights, violating 42 U.S.C. § 1983. Dkt. No. 41 at ¶¶ 61, 77. Doyle and the County move to dismiss plaintiff's § 1983 claims.

**A.    Fourth Amendment**

Defendants argue that plaintiff's initial detention in County jail did not deprive plaintiff of her Fourth Amendment rights because the detention was pursuant to a facially valid warrant and

9

was therefore reasonable. Plaintiff's opposition clarifies that she does not challenge the initial arrest and detention in 2014. Dkt. No. 54 at 8:19-23. Instead, plaintiff states that the FAC alleges that the County defendants' conduct *after* plaintiff's wrongful booking into the County jail in May 2014 caused the subsequent wrongful arrests and detentions. Dkt. No. 41 at ¶ 63.

The Fourth Amendment requires that a warrant particularly describe the subject of the warrant. U.S. Const. amend. IV. A warrant that specifies the subject's name and a detailed physical description satisfies the particularity requirement. *Rivera v. Cty. of Los Angeles*, 745 F.3d 384, 388 (9th Cir. 2014) (citing *United States v. Espinosa*, 827 F.2d 604 (9th Cir. 1987)), *cert. denied sub nom. Rivera v. Cty. of Los Angeles, Cal.*, 135 S. Ct. 870 (2014) (Mem.). A law enforcement agency's failure to update a warrant abstract in its computerized database may violate the Fourth Amendment's particularity requirement when an individual can show that the description has resulted in his mistaken arrest on numerous occasions. *Gant v. Cty. of Los Angeles*, 772 F.3d 608, 615-16 (9th Cir. 2014); *see also Rogan v. City of Los Angeles*, 668 F. Supp. 1384, 1390 (C.D. Cal. 1987) (holding that "a mistaken arrest can deprive a person of his Fourth and Fourteenth Amendment rights when: (a) the arrest warrant is constitutionally infirm; or (b) the arrest warrant is valid but . . . plaintiff is subjected to repeated arrests despite the fact that after the warrant's issuance the police receive notice of information exonerating the plaintiff"); *Smith v. Cty. of Los Angeles*, No. CV 11-10666 DDP (PJWx), 2015 WL 12731913, at *3 (C.D. Cal. Jan. 16, 2015) (citing *Wanger v. Bonner*, 621 F.2d 675, 682 (5th Cir. 1980); *Robinson v. City & Cty. of Denver, Colorado*, No. 12-CV-00483-WYD-KMT, 2014 WL 1395758, at *5 (D. Colo. Apr. 10, 2014)) (holding that "where the details other than the name are incorrect, the warrant may fail for lack of particularity, even if the name is correct—especially if the incorrect detail is likely to result in an innocent person being arrested").

The Court finds that plaintiff's allegations are sufficient to sustain her claim. With respect to the events subsequent to her initial detention in the County jail in May 2014, the FAC alleges that the County repeatedly failed to update the warrant for Huggard and that these failures foreseeably caused plaintiff's subsequent mistaken arrests and detentions. Dkt. No. 41 at ¶¶ 52-54, 63. Plaintiff alleges that at least as of May 2014, the County knew that Huggard had used

plaintiff's name and that erroneous information in the warrant for Huggard led to the mistaken arrest and detention of plaintiff under the warrant. *Id.* ¶¶ 30-31. Despite this knowledge, the County failed to correct its records so that law enforcement officers could distinguish between the subject of the warrant, Huggard, and plaintiff. *Id.* ¶ 54. In particular, the County continued to issue a warrant for Huggard using plaintiff's identifying information, including plaintiff's date of birth and physical description (but not her name), despite a court order to place Huggard's birthdate on the warrant. *Id.* ¶¶ 40-41. As a result, plaintiff was mistakenly arrested and detained at least twice under the warrant for Huggard in 2016. *Id.* ¶¶ 1, 35, 42. Plaintiff alleges a number of other instances where she was detained and searched under the warrant for Huggard. *Id.* ¶¶ 1, 44-45. The Court finds that these allegations are sufficient to state a claim for violation of plaintiff's Fourth Amendment rights.

Defendants cite *Hill v. California*, 401 U.S. 797 (1971), for the proposition that "when the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Id.* at 802. In *Hill*, the police had probable cause to arrest a robbery suspect (Hill), and went to Hill's apartment where they found a man matching Hill's description, as well as guns and ammunition in plain view. *Id.* at 799. The police did not have an arrest or search warrant, and they proceeded to arrest the man, searched the apartment, and seized guns, stolen property, and other evidence. The arrestee was not, in fact, Hill, and instead was individual named Miller. Hill was convicted of robbery, largely on the basis of items seized in the search of his apartment. Pursuant to the Fourth Amendment, Hill challenged both Miller's arrest and the search of his apartment incident to Miller's arrest. The Supreme Court upheld Hill's conviction, holding that the arrest and search were reasonable because the officers "unquestionably" had probable cause to arrest Hill and based upon all of the circumstances, the officers had a good faith belief that Miller was Hill. *Id.* at 803-04.

If plaintiff were challenging her initial arrest, *Hill* would support defendants' arguments for dismissal. However, plaintiff challenges the subsequent mistaken arrests and detentions which she alleges were caused by the failure of County employees to take corrective action on the warrant for Huggard, despite knowledge of plaintiff's initial mistaken arrest under the warrant and

11

the erroneous information on the warrant. Dkt. No. 41 at ¶¶ 8, 31, 41-42. The Court finds that *Hill* is distinguishable from the facts alleged in this case, and that plaintiff has stated a claim.

### B. Fourteenth Amendment

Defendants argue that plaintiff cannot state a claim for a violation of her rights under the Fourteenth Amendment "because the nature of the rights Plaintiff claims were infringed is completely covered by the Fourth Amendment, and therefore her claim is limited to the Fourth Amendment basis." Dkt. No. 48 at 5. Plaintiff contends that she has a separate right under the Due Process clause of the Fourteenth Amendment to be protected from procedures, information systems, or conduct that foreseeably leads to wrongful arrest and detention without specific protective procedures in place.

Section 1983 is not a source of substantive rights, and only provides a private cause of action for violation of federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Where the Fourth Amendment provides an explicit textual source of constitutional protection against governmental conduct, that Amendment must be the guide for analyzing these claims. *Id.* at 395; *Albright v. Oliver*, 510 U.S. 266, 273 (1994). On the other hand, a detention pursuant to a valid warrant, in the face of repeated protests of innocence, can after a lapse of time deprive an accused of her Fourteenth Amendment due process right to liberty. *Fairley v. Luman*, 281 F.3d 913, 917-18 (9th Cir. 2002) (citing *Baker v. McCollan*, 443 U.S. 137, 145 (1979)). And the failure to implement readily available procedures for decreasing the risk of wrongful detention may amount to a Fourteenth Amendment deprivation. *Gant*, 772 F.3d at 619 (citing *Fairley*, 281 F.3d at 918); *see also Rivera v. Cty. of Los Angeles*, 745 F.3d 384, 390 (9th Cir. 2014) (acknowledging that incarceration based on mistaken identity could violate the Due Process Clause); *Smith v. Cty. of Los Angeles*, 2015 WL 12731913, at *4 (finding that *Fairley* stands for the proposition that there can be a Fourteenth Amendment violation that is distinct from a Fourth Amendment particularity inquiry when law enforcement agencies fail to institute procedural safeguards that would have prevented the deprivation of liberty).

Defendants frame plaintiff's claim as falling solely within the unreasonable search and

seizure context, and they rely on *Podesta v. City of San Leandro*, No. C 05-2615 SBA, 2005 WL 2333802, at *1 (N.D. Cal. Sept. 21, 2005). Dkt. No. 48 at 5:7-12. In *Podesta*, the plaintiff alleged that police officers had arrested and beaten him, and he brought a claim alleging the violation of his Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. *Id.* The court dismissed the plaintiff's Fourteenth Amendment claim because "the gravamen of his Complaint is that he was subjected to an unreasonable search and seizure and possibly excessive force," and the plaintiff "fail[ed] to explain how any of the facts alleged in the Complaint support a due process clause claim." *Id.* at *4.

The Court finds that *Podesta* is inapposite. Plaintiff does not simply allege that her arrests and detentions were unreasonable. Rather, she alleges that defendants failed to institute reasonable quality control procedures for maintaining and verifying warrant information "to reduce the risk of innocent persons with the same or similar names − or innocent persons whose identities were stolen − from having their identities falsely registered in the MCSO recording system or database, or conflicted with, that of a wanted person." Dkt. No. 41 ¶ 52. Plaintiff alleges that defendants had notice of the error in the warrant information after plaintiff's initial arrest and detention at the County jail on May 23, 2014, and that in spite of the systems and procedures available to reduce the risk that plaintiff would be mistakenly identified as Huggard under the warrant, defendants repeatedly failed to take corrective action, resulting in further wrongful arrests and detentions. *Id.* ¶¶ 31, 52. The Court finds that plaintiff has alleged sufficient facts to state a claim under the Fourteenth Amendment, and DENIES defendants' motion to dismiss plaintiff's first cause of action.

## II. Municipal and Supervisory Liability (Second Cause of Action)

### A. *Monell* Liability

Defendants argue that plaintiff has failed to allege a basis for municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Local governments may be liable under § 1983 only when the actions of their employees in executing a government policy or custom deprive a plaintiff of his or her constitutional rights. *Id.* at 694; *Castro v. Cty. of Los*

*Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016), *cert. denied sub nom. Los Angeles Cty., Cal. v. Castro*, 137 S. Ct. 831 (2017). In addition, local governments may be held liable for acts of omission, such as a failure to train, committed with deliberate indifference to a constitutional right. *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010) (citing *City of Canton v. Harris*, 489 U.S. 378, 389-90 (1989)), *overruled on other grounds by Castro*, 833 F.3d at 1070. Further, "the dictates of *Monell* are satisfied" when a plaintiff establishes that the municipality policymakers were put on actual or constructive notice that a particular omission is substantially certain to deprive their citizens of their constitutional rights. *Castro*, 833 F.3d at 1076 (citing *Canton*, 489 U.S. at 396).

The Court concludes that plaintiff has alleged a basis for municipal liability. Plaintiff has alleged that the County, its supervisors, and MCSO policymakers were deliberately indifferent because they, *inter alia*: (1) failed to take any corrective action after plaintiff was first falsely booked on the warrant in May 2014; (2) continued to maintain the incorrect warrant after her plaintiff's February 2016 wrongful arrest, including failing to take corrective action despite the actual and constructive notice provided by plaintiff's March 9 and March 25, 2016 court dates (after which a MCSO employee re-issued the warrant on March 29, 2016); and (3) failed to correct the date of birth on the warrant, in violation of Judge Boren's April 8, 2016 order to do so. Dkt. 41, ¶¶ 27-31, 35, 37-39, 40-42. In addition, plaintiff alleges that Orr sent plaintiff's booking photo to the Ukiah police after being informed by the Ukiah police that plaintiff claimed she was not Huggard and that she had been repeatedly mistakenly arrested under the warrant issued for Huggard. *Id*. ¶ 42. The FAC also alleges that the alleged constitutional violations plaintiff suffered were caused by a failure to train municipal employees adequately, and a failure to enact or execute policies and procedures for decreasing the risk of erroneous arrests based on incorrect information in warrants. *Id*. ¶¶ 77-79. These allegations are sufficient to state a claim for *Monell* liability.

## B. Supervisory Liability

Plaintiff alleges that Doyle and other unnamed supervising employees (currently Doe

defendants) directed their subordinates' actions, set in motion a series of acts and omissions by subordinates, or failed to prevent subordinates' conduct, knowing that the subordinates' conduct violated and will violate plaintiff's constitutional rights.  Dkt. No. 41 at ¶ 73.  Defendants move to dismiss plaintiff's claim of supervisory liability against Doyle, arguing that the FAC's allegations against Doyle are conclusory.

"A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  There is no respondeat superior liability under [§] 1983."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); *see also Maxwell v. Cty. of San Diego*, 708 F.3d 1075, 1097 (9th Cir. 2013) ("[T]here is no respondeat superior liability under § 1983.  Rather, a government official may be held liable only for the official's own conduct.").  A supervisor may be liable under § 1983 upon a showing of his or her personal involvement in the constitutional deprivation, or a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).  A sufficient causal connection may be established by the supervisor's own culpable action or inaction in the training, supervision, or control of his subordinates; his acquiescence in the constitutional deprivations of which the complaint is made; or conduct that showed a reckless or callous indifference to the rights of others.  *Id.* at 1205-06 (citing *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)).

The Court finds that plaintiff has alleged enough to hold Doyle liable as a supervisor.  The FAC alleges that Doyle was the final policy making official at the MCSO and MCJ, and was "ultimately responsible" for all procedures, supervision and training at the County facilities where identifying information about the subject of a warrant is managed and communicated to other agencies.  Dkt. No. 41 at ¶ 8.  Plaintiff alleges that under Doyle's supervision, MCSO employees repeatedly failed to update the warrant for Huggard to include Huggard's date of birth and other identifying information, despite the MCSO having actual notice of the erroneous information in Huggard's warrant  *Id.* at ¶¶ 8, 30-31, 40-41.  Plaintiff also alleges, *inter alia*, that Doyle failed to institute procedures for decreasing the risk of erroneous detention of individuals in connection

with County warrants, failed to train employees or maintaining accurate information correlated to wanted persons, and failed to enact and/or maintain policies and procedures to ensure an accurate warrant database system. *Id.* ¶ 77. The Court finds that these allegations are sufficient. *See M.H. v. County of Alameda*, 90 F. Supp. 3d 889, 900-01 (N.D. Cal. 2013) (in § 1983 case alleging deliberate indifference to medical needs, holding allegations of supervisory liability sufficient where plaintiff alleged that defendant was medical director, was responsible for making and enforcing policies, procedures and training related to medical care of inmates, and that defendant approved, tolerated and/or ratified acts and omissions of healthcare personnel).[7]

### III.   California Constitution Article I, section 13 (Third Cause of Action)

The FAC alleges that County employees are liable for the seizure and incarceration of plaintiff, and for setting into motion the chain of events that led to the search and seizure of plaintiff's person and vehicle, in violation of Article I, section 13 of the California Constitution. Dkt. No. 41 at ¶¶ 86-87. Defendants move to dismiss plaintiff's claim on the ground that section 13 does not provide greater protection than that provided by the Fourth Amendment of the United States Constitution.

Like the Fourth Amendment, section 13 requires a warrant to particularly describe the subject of the warrant. Cal. Const. art. I, § 13. California courts have treated section 13 as "substantially equivalent" to the Supreme Court's construction of the Fourth Amendment. *Blair v. Pitchess*, 5 Cal. 3d 258, 270-71, n. 6 (1971). As discussed above, the Court finds that plaintiff has stated a claim for a violation of her Fourth Amendment rights, and thus DENIES defendants' motion to dismiss the third cause of action.

### IV.   Bane Act (Fourth Cause of Action)

The FAC alleges that County employees are liable for acting in concert or conspiracy, and

---

[7] Defendants also move to dismiss the claims against Doyle on the basis of qualified immunity. The Court finds that resolving whether Doyle is entitled to qualified immunity requires a determination of factual issues, and therefore cannot be resolved at this stage in this litigation.

16

with threat, intimidation or coercion to deprive plaintiff of her rights under the Bane Act, Cal. Civ. Code § 52.1, by, *inter alia*, violating plaintiff's rights under the Fourth and Fourteenth Amendments and the California Constitution. Dkt. No. 41 at ¶ 92.

Defendants move to dismiss this claim on the ground that plaintiff has not alleged any threats, intimidation or coercion separate and independent from the alleged wrongful conduct violating her constitutional rights. Plaintiff responds that the Bane Act does not require a threat, intimidation or coercion independent from that inherent in an unlawful arrest.

The Bane Act makes a person liable for conduct that deprives an individual of his or her rights "secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of" California through "threat, intimidation, or coercion." Cal. Civ. Code § 52.1(a). A "plaintiff in a search-and-seizure case must allege threats or coercion beyond the coercion inherent in a detention or search in order to recover under the Bane Act." *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1196 (9th Cir. 2015) (citing *Shoyoye v. Cty. of Los Angeles*, 203 Cal. App. 4th 947, 960 (2012)). Where a claim arises from an unlawful arrest, the plaintiff can meet the coercion requirement of the Bane Act by showing specific intent to violate the plaintiff's right to freedom from unreasonable seizure, rather than by showing "something beyond the coercion 'inherent' in the wrongful detention." *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766, 797-99, 801-02 (Ct. App. 2017) (distinguishing from *Shoyoye* on the ground that the plaintiff in *Shoyoye* did not suffer a constitutional violation).[8] In setting out its test, the *Cornell* court held that the specific intent element is met when (1) "the right at issue is clearly delineated and plainly applicable" to the circumstances; and (2) the defendant committed the act in question "with the particular purpose of depriving" or with "reckless disregard" of the person's right. *Cornell*, 17 Cal. App. 5th at 803-04.

---

[8] In *Shoyoye*, the court found that the plaintiff did not suffer any constitutional violation because his over-detention in jail arose from a lawful arrest combined with the jailer's negligence. *Shoyoye*, 203 Cal. App. 4th at 957-58. Noting that the "statutory framework of section 52.1 indicates that the Legislature meant the statute to address interference with constitutional rights involving more egregious conduct than mere negligence," the court found that the plaintiff's claim did not show "coercion independent from the coercion inherent in a wrongful detention itself." *Id.* at 958, 960.

This Court finds the reasoning in *Cornell* persuasive, and that the present facts are distinguishable from *Shoyoye*, which did not involve a claim of an illegal arrest. Plaintiff has alleged that she was deprived of her constitutional rights, and that County employees acted with reckless disregard and/or deliberate indifference of her rights. Dkt. No. 41 at ¶ 68. Plaintiff's allegations are sufficient to survive a motion to dismiss. *See Cornell*, 17 Cal. App. 5th at 803-04 (holding that a jury must make a factual determination whether the defendant committed the act "with the particular purpose of depriving" the plaintiff of his constitutional right).

The County also argues that it is immune from liability because the Bane Act does not provide a basis for a direct liability claim against the County. Plaintiff's opposition clarifies that plaintiff is not seeking a direct Bane Act Claim against the County, but rather the plaintiff seeks to hold the County vicariously liable for injuries proximately caused by its employees. Dkt. No. 41 at ¶ 94. Under California law, public entities are liable for injuries proximately caused by their employees' actions within the scope of employment, but public entities are immune from liability to the extent their employees are immune from liability. *Gant*, 772 F.3d at 623; Cal. Gov't Code § 815.2. Here, defendants do not argue that any of the County employees were immune from liability under the Bane Act.

Accordingly, the Court DENIES the motion to dismiss plaintiff's claim under the Bane Act.

## V.    False Arrest and False Imprisonment (Fifth Cause of Action)

Plaintiff alleges that County employees are liable for proximately causing plaintiff's false arrest and false imprisonment, and that the County is vicariously liable under this claim for injury proximately caused by its employee's conduct, committed within the scope of his or her employment. Dkt. No. 41 at ¶¶ 97-99. Defendants move to dismiss the false arrest and false imprisonment claim on the grounds that no County employee actually arrested plaintiff, was responsible for the erroneous information in the warrant that led to plaintiff's initial arrest, or was aware of the wrongful information in the arrest warrant.

"The tort of false imprisonment and false arrest are considered one in the same, because

false arrest is but one way of committing a false imprisonment." *Martin v. Cty. of San Diego*, 650 F. Supp. 2d 1094, 1105 (S.D. Cal. 2009), *on reconsideration in part* (Oct. 23, 2009) (quotation omitted). False imprisonment requires (1) "the nonconsensual, intentional confinement of a person," (2) "without lawful privilege," and (3) "for an appreciable period of time, however brief." *Shoyoye*, 203 Cal. App. 4th at 962 (quoting *Easton v. Sutter Coast Hospital* 80 Cal. App. 4th 485, 496 (Ct. App. 2000)). "A person who sets in motion a false arrest/imprisonment can be held liable for the tort even if he does not directly participate in the actionable conduct." *Martin*, 650 F. Supp. 2d at 1106 (citing *Bell v. State of California*, 63 Cal. App. 4th 919, 928 (Ct. App. 1998) (finding "defendants could be held liable for false arrest effected by other officers where defendants' conduct lead to the unlawful arrest")).

Plaintiff alleges that she was falsely imprisoned when she was detained by law enforcement officers in February and May of 2016, as well as other unspecified dates. Dkt. No. 41 at ¶¶ 1, 35, 42. Although County officers did not arrest plaintiff in February or May 2016, the FAC alleges that the County defendants are liable for those false arrests due to their repeated failures to correct the warrant information. *See* Dkt. No. 41 at ¶¶ 8, 30-31, 40-41. Further, with regard to the May 2016 arrest, plaintiff alleges that Orr knew or reasonably should have known that plaintiff was not Huggard and that plaintiff had been mistakenly booked into the County jail in 2014 on the warrant for Huggard, and nevertheless sent plaintiff's picture from the 2014 booking to the Ukiah Police Department officer when asked for a photograph of the subject of the warrant for Huggard. *Id.* ¶ 42. Plaintiff argues that because Orr was acting within the course and scope of employment by the County, the County may be held vicariously liable for her conduct. *Id.* ¶ 8; Cal. Gov't Code § 815.2. The Court finds that the FAC alleges sufficient facts to sustain her false imprisonment claim against defendants, and accordingly, the Court DENIES the motion to dismiss plaintiff's false imprisonment/arrest claim.

## VI. Negligence (Sixth Cause of Action)

Plaintiff alleges that defendants owed her a duty to (a) investigate before causing plaintiff to be seized; (b) correct information known to be incorrect to prevent plaintiff from being arrested

and imprisoned based on mistaken identity; (c) investigate before seeking arrest of or summoning plaintiff; (d) seek, obtain or follow training and experience in investigating and correcting false information; (e) refrain from causing unlawful and wrongful seizures; and (f) refrain from violating plaintiff's rights secured under the U.S. Constitution, and under the California Constitution and laws. Dkt. No. 41 at ¶ 105. The FAC alleges that County employees acted negligently and breached their duty of care, which resulted in plaintiff's injury. *Id.* at ¶ 107. The County is vicariously liable under this claim for injury proximately caused by its employee's conduct, committed within the scope of his or her employment. *Id.* at ¶ 106. Defendants argue that the County employees had no duty to inquire into the validity and accuracy of a search warrant issued by a Superior Court, and therefore owed no duty of care to plaintiff.

To establish a negligence claim, a plaintiff must show that the defendant had a duty to use reasonable care, the defendant breached that duty, and the breach was the proximate or legal cause of the resulting injury. *Hayes v. County of San Diego*, 57 Cal. 4th 622, 629 (Ct. App. 2013). Reasonableness of conduct is determined in light of the totality of the circumstances. *Id.* "A defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous." *Giraldo v. California Dep't of Corr. & Rehab.*, 168 Cal. App. 4th 231, 245 (Ct. App. 2008) (quoting *Tarasoff v. Regents of University of California*, 17 Cal. 3d 425, 434-435 (1976)). "A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act." *Williams v. State of California*, 34 Cal. 3d 18, 23 (1983). A special relationship between the police and an individual may exist where the police created or increased a peril by affirmative acts. *M.B. v. City of San Diego*, 233 Cal. App. 3d 699, 704-05 (Ct. App. 1991) (citing *McCorkle v. City of Los Angeles*, 70 Cal. 2d 252 (1969) (finding that a police officer investigating an auto collision in which the plaintiff was involved had a duty of reasonable care when the police officer asked the plaintiff to come to the middle of the intersection and another car hit the plaintiff)); *Williams*, 34 Cal. 3 at 24 (citing *McCorkle*, 70 Cal. 2d 252; *Morgan v. County of Yuba*, 230 Cal. App. 2d 938 (Ct. App. 1964)) (recognizing a breach of duty where an affirmative act, omission or failure to act places a

person in peril or increases the risk of harm).

Plaintiff argues that by booking and obtaining plaintiff's identifying information under the warrant for Huggard, County employees took affirmative acts which foreseeably increased the risk that plaintiff's identifying information would become wrongly associated with the warrant, and that she would be arrested again under the warrant. The FAC alleges, on information and belief, that the County maintained a database containing identifying information of suspects and wanted persons, as well as information on persons wrongfully arrested on warrants for another. *Id.* The Court finds that the FAC plausibly alleges that there were County employees who knew that plaintiff was mistakenly booked and detained under the warrant for Huggard, and thus had a duty to use reasonable care to mitigate the risk of future wrongful arrests.

Plaintiff alleges that County employees failed to take corrective action after the May 2014 incident, and thereby wrongfully and foreseeably caused plaintiff to be arrested and detained multiple times under the warrant for Huggard. *Id.* at ¶¶ 31-32, 35, 40-42, 44-45, 52, 54. Plaintiff alleges that she sustained injuries, including emotional distress, as a proximate result of defendants' acts and omissions. *Id.* at ¶ 59. This Court finds that plaintiff has alleged sufficient facts to state a claim for negligence against the defendants, and DENIES defendants' motion to dismiss this claim.

**VII.  Compliance with the California Government Claims Act**

Defendants argue that plaintiff's California state law claims (Third-Sixth Causes of Action) are barred because plaintiff did not comply with procedural requirements under the California Government Claims Act. Defendants argue that plaintiff's cause of action accrued in May 2014, when plaintiff allegedly was mistakenly arrested and detained at the County jail, and therefore that her October 21, 2016 tort claim was untimely. Defendants also contend that plaintiff's challenge to the February 2016 arrest and detention is also untimely, and that plaintiff's claim form does not embrace the alleged May 10, 2016 arrest because the claim form states that she was arrested "between April 15-30 2016 do not recall exact date." Dkt. No. 48-1 at 2.

Plaintiff contends that her Government Code claim substantially complied with the statute

because it provided the County with sufficient information to investigate her claim and the County was not prejudiced. Plaintiff argues that her claims did not accrue in May 2014 because she only asserts state law claims arising out of her arrests in February and May 2016. Plaintiff asserts that her claim was filed well within six months from the May 10, 2016 arrest, and she argues that the May 10, 2016 arrest is close to the April 15-30, 2016 time period that plaintiff wrote down on the claim form. Plaintiff also argues that the February 2016 arrest is encompassed within her claim pursuant to the continuous violation doctrine.

Before filing suit on tort claims against certain state actors, a plaintiff must file a government claim pursuant to the California Government Claims Act. Cal. Gov. Code. § 810 *et seq*. A plaintiff must present her claim "not later than six months after the accrual of the cause of action." Cal. Gov. Code § 911.2. The cause of action accrues on the date when the cause of action became actionable. Cal. Gov't Code § 901. A cause of action accrues when it is "complete with all of its elements," including wrongdoing, harm and causation. *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1191 (2013); *Garber v. City of Clovis*, 698 F. Supp. 2d 1204, 1212 (E.D. Cal. 2010).

The purpose of the claims statutes is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *DiCampli-Mintz v. Cty. of Santa Clara*, 55 Cal. 4th 983, 991 (2012) (internal quotations omitted). Accordingly, a suit should not be dismissed for failure to comply with the statute as long as the plaintiff has provided "sufficient information . . . on the face of the filed claim to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit." *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 456 (Cal. 1974). This is known as the doctrine of "substantial compliance." *Id*. at 456-57; *Elias v. San Bernardino County Flood Control Dist*., 68 Cal. App.3d 70, 74 (Cal. Ct. App. 1977) ("courts employ a test of substantial rather than strict compliance in evaluating whether a plaintiff has met the demands of the claims act").

The Court finds that plaintiff's claim form provided the County with sufficient information to allow the County to adequately investigate the claims arising from the February and May 2016

22

arrests. As an initial matter, the Court notes that plaintiff filed her claim form *pro se*, and the Court considers that fact when evaluating the sufficiency of plaintiff's claim form. Plaintiff's claim form stated that plaintiff was falsely arrested around April 15-30, 2016 (and expressly noted that she wasn't sure of the exact date), and the form stated that the warrant under which she was arrested was for "Erin Huggard." The claim form stated that plaintiff had been falsely arrested *after* going to court and proving that the warrant was "false," that the false warrant had been "reissued" by the County Sheriff's Office, and plaintiff stated that the responsible County employees were "court and jail employees of jail and Sheriff's office including public defender Bryna Holland." Dkt. No. 48-1. Based upon all of this information, the Court finds that the County was given sufficient information in the claim form to determine that plaintiff had been arrested in February and May 2016 (based on, *inter alia*, the arrest records, the warrant for Huggard, and the March 2016 court proceedings in which plaintiff asserted she had been falsely arrested under the warrant for Huggard). Further, defendants have not argued that any prejudice arose from plaintiff's failure to list the correct dates of her arrests. As such, plaintiff's claim form substantially complied with the statutory requirements.

There is no dispute that plaintiff filed her claim form within six months of her May 2016 arrest, and thus plaintiff's claims regarding the May 2016 arrest are timely. The Court also finds that, at least as a pleading matter, that plaintiff has alleged facts showing that the February 2016 arrest was result of a continuing course of conduct taken by the County employees. Thus, plaintiff may "seek relief for events outside of the limitations period if a series of violations are related closely enough to constitute a continuing violation, and if one or more of the violations falls within the limitations period." *Parsons v. Alameda Cty. Sheriff Dep't*, No. 14-CV-04674-HSG, 2016 WL 1258590, at *7 (N.D. Cal. Mar. 31, 2016) (citing *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001)); *Aryeh*, 55 Cal. 4th at 1197-98; *Garber*, 698 F. Supp. 2d at 1212-13. The Court DENIES the motion to dismiss plaintiff's state law claims for failing to comply with the California Government Claims Act.[9]

_____

[9] The Court's order does not preclude the County defendants from showing, as a factual matter after discovery, that the February 2016 arrest was not closely related to the May 2016

1

2    **VIII.   Standing for Injunctive Relief**

3        Defendants move to dismiss plaintiff's request for injunctive relief on the ground that

4    plaintiff has failed to allege facts to establish an imminent threat of irreparable harm and therefore

5    lacks standing.

6        A plaintiff is entitled to equitable relief only if there is a "likelihood of substantial and

7    immediate irreparable injury" from the same wrong suffered.  *City of Los Angeles v. Lyons*, 461

8    U.S. 95, 111 (1983).   "[P]ast wrongs are evidence bearing on whether there is a real and

9    immediate threat of repeated injury."  *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).  A plaintiff

10   may sufficiently allege "likelihood of substantial and immediate irreparable injury" where the

11   complaint adequately alleges that the defendant's conduct violated plaintiff's constitutional right

12   on numerous occasions and will continue to do so.  *Chavez v. United States*, 226 F. App'x 732,

13   737 (9th Cir. 2007).

14       Here, although the FAC alleges that the criminal case against Huggard (Case No.

15   SC185382A) was dismissed around June 2016, plaintiff alleges that she suffered harm after that

16   date as a result of defendants' conduct.  Specifically, plaintiff alleges that in November 2016, she

17   applied for a job and was hired pending a background investigation.  Dkt. No. 41 ¶ 47.  The

18   employer later rescinded the employment offer after the background check erroneously shows that

19   plaintiff (actually Huggard) had a criminal conviction and was on probation with the County of

20   Marin.  *Id.*  The Court finds that these allegations are sufficient to confer standing for injunctive

21   relief at this stage of the litigation, and accordingly, the Court DENIES the motion to dismiss

22   plaintiff's requests for injunctive and declaratory relief.[10]

23

24

25

26

---

27   arrest.
         [10]  Plaintiff's opposition clarifies that she is not asserting a separate claim regarding the
28   November 2016 job denial, but rather that it is an element of the damages she is seeking.  Dkt. No.
         54 at 23 n.6.

**CONCLUSION**

For the foregoing reasons, the Court DENIES defendants' motion to dismiss.

**IT IS SO ORDERED**.

Dated: February 14, 2018

_____

SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California